**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MAXIMINA MORALES,**

        **Plaintiff,**

**-vs-**                                                                              **Case No.  6:14-cv-1617-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed for SSI benefits on October 25, 2011, alleging an onset of disability beginning January 1, 2007 due to scoliosis, migraines, severe back pain, alopecia; she subsequently amended the onset date to October 25, 2011. R. 16, 171, 175, 321. Her application was denied initially and upon reconsideration. R. 63-92. Plaintiff requested a hearing, which was held on April 16, 2013, before Administrative Law Judge Edgardo Rodriquez-Quilichini (hereinafter referred to as "ALJ").

Doc. 22-3 (Supplemental Transcript) R. 317-47. In a decision dated June 7, 2013, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 16-24. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on August 1, 2014. R. 1-3. Plaintiff filed this action for judicial review on October 3, 2014. Doc. 1.

### B. Medical History and Findings Summary

Plaintiff was 53 years old at the time of the ALJ's decision. R. 146, 323. She had an eleventh grade education and no history of past relevant work in the previous 15 years. R. 22, 176, 323.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of scoliosis, migraines, severe back pain, alopecia. R. 171, 175. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a back disorder (thoracolumbar scoliosis), dyslipidemia, headaches, and right ear tympanic membrane perforation, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 18-19. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work as she could lift, carry, push and/or pull twenty (20) pounds occasionally and ten (10) pounds frequently; could stand and walk for approximately six (6) hours and can sit for approximately six (6) hours in an 8-hour workday with normal breaks; could climb stairs, balance, stoop, kneel, crouch and crawl occasionally, but should never climb ladders or scaffolds; must avoid exposure to vibration, unprotected heights and to hazardous machinery; and could not handle exposure to a noise level intensity above the "quiet" level as defined in the Selected Characteristics of Occupations (SCO) which is the noise intensity level in a library, many private offices, funeral reception, golf course, art museum. R. 19. The ALJ concluded that the Plaintiff was not capable of performing her past relevant work, as there was no prior work experience[1]. R. 22.

---

[1] Plaintiff had earnings from 1982-1986, when she was a cashier in a clothing store. R. 164, 169, 176.

Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a counter clerk, room service clerk, and a routing clerk. R. 23. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 23.

Plaintiff now asserts three points of error. First, she argues that the ALJ erred by finding she had the RFC to perform light work without specifically considering certain medical opinions in the record. Second, Plaintiff contends the ALJ erred by improperly applying the pain standard and evaluating her credibility. Third, she asserts that the ALJ erred in relying on the testimony of the VE when the jobs noted by VE had requirements beyond the determined residual functional capacity. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.   STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   RFC and the physician opinions

Plaintiff argues that the ALJ erred in determining that she had the RFC to perform light work with additional non-exertional limitations, by failing to weigh and adequately consider all the pertinent evidence and opinions in the record. The Commissioner argues that substantial evidence supports the Commissioner's decision that Plaintiff is not disabled.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The Social Security Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "Generally, the opinions of examining physicians are given more weight than those of nonexamining physicians, [and] treating

physicians' opinions are given more weight than non-treating physicians." *McNamee v. Soc. Sec. Admin.*, 162 F. App'x 919, 923 (11th Cir. Jan. 31, 2006) (unpublished) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)); *Baker v. Astrue*, 2011 WL 899311, *7 (M.D.Fla. 2011).

The ALJ determined Plaintiff's RFC was for light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). Specifically, she can lift, carry, push and/or pull twenty (20) pounds occasionally and ten (10) pounds frequently. She can stand and walk for approximately six (6) hours and can sit for approximately six (6) hours in an 8-hour workday with normal breaks. She can climb stairs, balance, stoop, kneel, crouch, and crawl occasionally, but should never climb ladders or scaffolds. She must avoid exposure to vibration, unprotected heights and to hazardous machinery. This individual can handle exposure to a noise level intensity not above the "quiet" level as defined in the Selected Characteristics of Occupations (SCO). "Quiet" is defined in the SCO as the noise intensity level in a library, many private offices, funeral reception, golf course, art museum.

R. 19.

Plaintiff argues that the ALJ's RFC determination is not based on substantial evidence because the ALJ failed to indicate the weight he assigned to the opinion from Plaintiff's physicians at American Healthcare Clinic ("AHC"). On June 12, 2012, Plaintiff was seen at the American Healthcare Clinic by Dr. Lagares for complaints of headaches and upper back pain; she rated her pain as 8/10, and as "on and off." R. 311. Dr. Lagares indicated that Plaintiff had a history of scoliosis, and on examination was noted to be anxious with tachycardia. R. 311. Dr. Lagres also note Plaintiff's deviation of thoracic curvature to right side, as well as tenderness, headache, upper back pain and tachycardia (recurrent episodes per patient). R. 311. Four months later, on October 6, 2012, Plaintiff returned to AHC and was seen by saw Dr. Vilchez, complaining of chronic upper and lower back pain, neck and lower back tenderness with scoliosis; the physician also noted that Plaintiff had hypercholesterolemia, dyslipidemia. R 309.

The Commissioner argues that, as the ALJ expressly noted, Plaintiff's medical records do not contain any opinions from treating or examining physicians – including AHC – indicating that

Plaintiff is disabled or has limitations greater than those limitations reflected in his RFC finding. R. 22, 309-16. The Commissioner also argues that, contrary to Plaintiff's assertion, her records from AHC do not reflect opinions from a "treating" physician (R. 309-16) because the Social Security Regulations define "treating source" as a physician who has an "ongoing treatment relationship" with a claimant where the claimant sees the provider with a frequency consistent with the accepted medical practice for that type of treatment or evaluation and, Plaintiff did not establish a "treating source" relationship with any particular physician at AHC. Instead, the Commissioner contends, Plaintiff's treatment at AHC consisted of only two visits with a nurse[2] (who by definition is not a "treating source," but is an "other source"[3]) and with Dr. Legares for a discussion about Plaintiff's lab results and a single examination; nowhere in the regulations does it describe a whole clinic or other institution as a "treating source." R. 309, 311, 315; C.F.R. § 416.902. (defining a "treating source"). The Commissioner argues that the ALJ adequately discussed Plaintiff's treatment notes from AHC (R. 21), which reflect few appointments and medication refills, and his consideration of those limited records was sufficient; nothing in the limited AHC treatment records indicates Plaintiff has limitations that would preclude performance of the light-level work reflected in the RFC finding assigned by the ALJ. R. 22.

In this case, the ALJ discussed the limited treatment records for Plaintiff's scoliosis and complaints of back pain or backache by noting:

> The record reflects the claimant was diagnosed with scoliosis at age 16 with complaints of backache prior to the amended alleged onset date (Exhibits 3F, 7F, and 9F). More recently, she underwent x-ray studies of the thoracic spine in May 2011, which showed S-shaped thoracolumbar scoliosis, with intact disc spaces, preserved costovertebral articulations, and no evidence of spondylosis of spondylolisthesis detected (Exhibit 3F at 7). She was seen at the Florida Hospital emergency room in

---

[2] The record indicates on March 28, 2012 and October 6, 2012 Plaintiff was "seen by" Mariaelena Cruz who is not an M.D., although on October 6, 2012 (only) the record was "signed by" Simeon Vilchez, M.D. R. 309, 315.

[3] The Social Security Regulations state that a nurse is an "other source." § 416.913; Social Security Ruling 06-03p. http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR2006-03-di-01.html), 2006 WL 2263437, at *2.

> November 2011 with complaints of chronic mild to moderate neck, mid-back, and low-back pain. She reported she was not taking medications for her pain at that time. X-ray studies again showed "mild" arthritic facet disease and "subtle" scoliosis of the cervical spine, "marked" thoracolumbar scoliosis, with convexity at L3 and T8-9 (Exhibit 4F).
>
> Due to the paucity of objective medical evidence, the claimant was sent to a consultative physical examination, performed by Nitin Haté, M.D., in December 2011. An examination revealed her arm span is 60 inches, while her height is 58 inches. Range of motion of the thoracolumbar spine was reduced, she was observed to squat 50%, and she could only partially accomplish toe and heel walking secondary to pain. Following her examination, Dr. Haté opined the claimant "may have some difficulties in lifting very heavy weights, particularly lifting from the floor" (Exhibit 7F).
>
> Thereafter, she sought chiropractic care beginning in January 2012. Following her initial assessment, during which she complained of neck and low back pain as well as headaches, she was recommended chiropractic spinal adjustments two to three times per week for two to three weeks, and physiotherapies including ice, moist heat, electric muscle stimulation, and myofascial release. However, the record reflects only three visits for treatment (Exhibit 9F). She also presented to American Health Care on several occasions in 2012 for pain medication refills (Exhibit 14F).
> * * *
> As to the opinion evidence, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision. Significant weight is accorded to the opinion, as noted above, of the examining medical consultant, Dr. Haté. Her opinion is consistent with her examination as well as the evidence of a whole, and is therefore reflected in the residual functional capacity determination for light work.
>
> The residual functional capacity conclusions reached by the physician employed by the State Disability Determination Services also support a finding of "not disabled" (Exhibit 4A). Although he was non-examining, and therefore, his opinions do not as a general matter deserve as much weight as those of treating or examining physicians, those opinions do deserve some weight, particularly in a case like this where there exist a number of other reasons to reach similar conclusions.

R. 21-22.

The ALJ accurately described a "paucity of objective medical evidence" particularly as it related to Plaintiff's treatment for scoliosis. The ALJ accurately identified Plaintiff's visits to ACH as "for pain medication refills" and not specifically for diagnosis or treatment of her scoliosis. Plaintiff was seen only once by an M.D., Dr. Lagares, when complaining of "upper back pain since 4 days ago" and tenderness in the back on June 12, 2012; Dr. Lagares did not impose any restrictions,

-8-

but prescribed medications without further comment for pain from "headache, upper back pain, tachycardia." R. 311. When Plaintiff was seen again by Dr. Lagares in April 2012, she had "no complaint" and received the results of her lab work for high cholesterol and triglycerides. R. 312. The ALJ did not err in failing to discuss Dr. Lagares' single back-related treatment note from June 2012, and his description of the ACH notes as for "pain medication refills" was based on substantial evidence.

Overall, the Record shows Plaintiff's received extremely limited treatment for scoliosis[4] and the ALJ appropriately noted the only significant record for scoliosis treatment was from the November 2011 emergency room records. Plaintiff received treatment in November 2011 at the Emergency Room for complaints of chronic mild to moderate neck, mid-back, and low-back pain; she had mild arthritic facet joint disease in the lower cervical spine and subtle scoliosis, and marked thoracolumbar S-shaped scoliosis in the lumbar convexity without fracture and intact disc spaces, preserved costovertebral articulations, and no evidence of spondylosis of spondylolisthesis. R. 235, 241, 250-55, 265.

In January 2012, Plaintiff was examined by a chiropractor[5], Esther Pichardo at Total Health Chiropractic Solutions, who noted Plaintiff's report that her neck pain was aggravated when "cleaning her house and mopping the floor"; she reported that "her problems continue to be relieved when she gets adjusted, uses heat, gets massaged, uses NSAIDs, rests, takes a warm bath and stretches." R. 265-67. The chiropractor's recommendation was for chiropractic spinal adjustments two to three times per week for two to three weeks; Plaintiff decided to go home to think about the treatment plan. R. 266. She subsequently underwent chiropractic massage treatment two times in January 2012. R. 267-68. However, at the visit for her "well woman" exam with the AHC nurse in March 2012,

---

[4]There are four pages of progress notes from Brunilda Cruz, M.D. that are only partially legible and appear to be written in Spanish. R. 220-33. Plaintiff does not address these records.

[5]The chiropractor is also considered an "other" source under the Social Security Regulations.

Plaintiff reported only "occasional" left side neck pain and the nurse noted "no tenderness" of the back. R. 315.

The ALJ accurately discussed Dr. Haté notes of the consultative examination in which the physician found that Plaintiff had an S-shaped curve with thoracic curvature to the right; dextroscoliosis about 15 degrees with a compensated levoscoliosis in the lumbar area, and her squatting was restricted and range of motion in thoracoumbar region was reduced. R. 255-57. However, he also noted that although Plaintiff complained of "pain for several years" she "does not have any particular medications" but "occasionally goes to the hospital emergency room and gets pain medications." R. 257. As to her ability to work, the ALJ accurately noted Dr. Haté's December 2011 opinion that Plaintiff "may have some difficulties in lifting very heavy weights particularly lifting from the floor. She has never worked but otherwise had [a] normal life. She has three grown up children and four grandchildren." R. 257. The ALJ's decision concerning Plaintiff's RFC was based on substantial evidence.

### B.  Pain and credibility

Plaintiff contends the ALJ erred by improperly evaluating her credibility and applying the pain standard to her pain from scoliosis and recurrent headaches. The Commissioner contends that Plaintiff did not prove that her subjective complaints were fully credible. R. 20.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising

>from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). Plaintiff acknowledges that this is the prevailing "pain standard" in the Eleventh Circuit, and cites to Social Security Ruling 96-7p (Doc. 21 at 10-11), as does the ALJ. R. 19. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam)(ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").

Plaintiff first argues that it is impossible to review the credibility of her testimony – which the ALJ indicated was "unpersuasive and contradictory" (R. 20) – because the transcript from the hearing is not in the Record. However, the Commissioner has since submitted the Supplemental Transcript which contains Plaintiff's hearing testimony. Doc. 22-3 (containing R. 317-47). Second, Plaintiff challenges the ALJ's finding that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R 20. Plaintiff contends that the ALJ's credibility finding is "nothing more than boiler plate type language, and does not offer enough reasoning to support the ALJ's determination that the claimant is not credible." Doc. 21 at 13-14. Thus, Plaintiff argues, the ALJ's credibility conclusion is not supported by substantial evidence in the record which amounts to a failure to develop a full and fair record. She argues that she has had a long-standing issue with pain which "has been well documented throughout the medical records" and there is objective evidence supporting her pain complaints, including X-rays which revealed facet joint disease and subtle scoliosis of the

cervical spine and marked thoracolumbar S-shaped scoliosis in the lumbar and thoracic spine. Doc. 21 (citing R. 242-45, 255, 265, 309, 311).

The Commissioner contends Plaintiff's less than candid testimony and inconsistencies with the other evidence provided substantial evidence supporting the ALJ's credibility finding. R. 20. The Commissioner argues that the ALJ provided explicit and adequate reasons for his credibility determination in his decision, including Plaintiff's lack of any work history in the past twenty years, her inconsistent limited daily activities, and her evasive, vague, or contradictory testimony. R. 317-47. The Commissioner points to the ALJ's specific citation to Plaintiff's testimony regarding her abilities to perform household chores, in which she testified she washed her clothes and sometimes cooked, but then said her daughter in-law helps or does these tasks, yet also testified her daughter in-law has lived with her for only five months. R. 334-37, 340. The Commissioner also cites Plaintiff's testimony that she cannot mop, which contradicted her complaints to her chiropractor in January 2012 that her condition was aggravated when mopping and cleaning her house. R. 265, 335. Other treatment records from October 2012 that the Commissioner points to reflect Plaintiff was able to complete all activities of daily living. R. 303. The Commissioner contends the ALJ's finding that Plaintiff's subjective complaints were disproportionate to the medical evidence was based on her lack of treatment history to support her complaints of disabling pain.

In this case, the ALJ's reasons for discounting Plaintiff's credibility was quite detailed and far more than "boilerplate language." The ALJ considered the lack of objective medical evidence and Plaintiff's inconsistent statements about her activities:

> In analyzing the credibility of the claimant's subjective complaints, the first factor considered involves her work history. The claimant has never worked, which raises some questions as to whether the current unemployment is truly the result of medical problems. Another factor considered involves her daily activities. However, her testimony regarding such was unpersuasive and contradictory. Notably, her testimony regarding her ability to clean was confusing. For instance, she said that she does her laundry, then she said that her daughter in law helps her; she said that her daughter in law helps with household chores. However, her daughter-in-law has been living with

her for only five months. She was also vague regarding her computer use. During her testimony, she volunteered testimony as to using a computer. When asked whether she uses it, she said "not really." Then she said she has no internet connection.

As to cooking, she testified that she cooks sometimes, and then a bit later she said that her daughter-in-law is the one who cooks. She said she goes to Church and that the service lasts for 3 hours, then she said that she stopped going for 3 months (Testimony). Another example, is when she testified that in the morning she washes dishes but then, shortly after, she qualified her answer to say that lots of times she can't do dishes because of hand pain (Testimony). Thus, although the claimant has at times described daily activities that are fairly limited, several factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, the claimant's responses while testifying were evasive, vague, and/or contradictory at times, and left the impression that the claimant may have been less than entirely candid. At the very least, even if the inconsistent information provided by the claimant was not the result of a conscious intention to mislead, the inconsistencies nevertheless suggest that the information provided by the claimant generally may not be entirely reliable. Secondly, her allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Moreover, in fact, there is evidence suggesting the claimant's daily activities are not as limited as alleged, as Florida Hospital treatment notes from October 2012 show she was able to complete all activities of daily living (Exhibit 13F at 18). Thirdly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the lack of medical evidence showing a more restrictive residual functional capacity.

Turning to the objective medical evidence, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The record reflects significant gaps in the claimant's history of treatment; although she repeated many times that she lacks a health insurance, she did not show any evidence of unsuccessful attempts made to secure treatment from different sources.
* * *
Thus, the claimant's subjective complaints of functional limitations are disproportionate to the medical evidence and are not fully credible considering both medical and other evidence of record (20 C.F.R. § 416.929). Given the reports of the physical examinations, and taking into consideration the lack of significant complaints and medical treatment, the residual functional capacity for a reduced range of light work, as detailed above, is appropriate.

R. 20-22.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons

must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, including her lack of work history, the "paucity of objective medical evidence" (as discussed in detail in the previous section), the opinion of the consultative examiner, and the vagueness and inconsistency in her statements about her activities of daily living and the statements in the record. In addition to the Florida Hospital October 2012 treatment notes cited by the ALJ indicating she was able to "perform all activities of daily living" (R. 303), the same record reported "she is very active" and was driving (on that occasion) from Orlando to DeLand – which is a distance of 42 miles, or a drive of about one hour. R. 303. Plaintiff testified at that hearing that although she has a driver's license she does not drive except to the supermarket which is close; the ALJ also clarified that she had an active driver's license. R. 339. The ALJ considered the factors he is directed to consider in determining the credibility of Plaintiff's pain complaints. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's reasons for discounting Plaintiff's credibility are supported by substantial evidence.

### C.     VE testimony

Plaintiff asserts that the ALJ erred in relying on the testimony of the VE when the jobs noted by the VE had requirements beyond the determined residual functional capacity. The Commissioner argues that the noise level of one of the three jobs (counter clerk) and Plaintiff's ability to perform that job because of an excessive noise level are immaterial to the disability determination which relied on two additional positions.

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner

has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1558-59. However, exclusive reliance on the "grids" is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987); *cf. Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559. In this case, the ALJ relied on the VE's testimony to find that the hypothetical person with the limitations noted in the residual functional capacity could perform the jobs of counter clerk, room service clerk, and routing clerk. R. 23.

Plaintiff argues that the ALJ erred by relying on the flawed testimony of the vocational expert, which did not fully and accurately reflect Plaintiff's condition[6], including the limitation to "quiet" level of noise. She contends that at least the job of counter clerk requires noise levels at a level above the "quiet" level, as per the Selected Characteristics of Occupations (on which the ALJ also relied). Although she also argues – somewhat inconsistently – "it is clear that the jobs" of room service clerk and routing clerk also required noise levels above "quiet" level, she does not provide any citation to authority.

The Commissioner argues that the ALJ properly relied on the VE's testimony in finding that Plaintiff can perform jobs available in significant numbers in the economy based on the ALJ's

---

[6]Plaintiff also argues that there is error in determining the hypothetical is accurate because there is no hearing transcript in the record; however, the Supplemental Transcript has been submitted.

-15-

hypothetical question to the VE which accurately conveyed the ALJ's RFC finding. R. 22-23, 342-44. The Commissioner argues that the hypothetical question need only contain those functional restrictions the ALJ finds supported by the record, and need not include all subjective complaints made by the claimant. Doc. 24 at 10 (citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986)). The Commissioner argues that, even if Plaintiff could not perform the job of counter clerk, she could still perform the jobs of room service and routing clerk, totaling thousands of available jobs in the state and national economy., according to the VE (R. 343). The Commissioner also argues that the VE's testimony is substantial evidence that Plaintiff can perform the counter clerk job (R. 344), and to the extent the DOT and its companion publication, the SCO, indicate the noise level is above "quiet," Plaintiff has not shown the ALJ erred in relying on the VE's expertise in finding performance of that job within Plaintiff's RFC and abilities because the DOT[7] "provides only standardized job information, whereas a vocational expert's testimony is tailored to address a particular claimant's vocational profile and impairments." Doc. 24 (citing *Romine v. Barnhart*, 454 F.Supp.2d 623, 626-27 (E.D. Tex. 2006); *see also Lipson v. Barnhart*, 347 F.Supp.2d 1182, 1188-89 (M.D. Ala. 2004)).

In this case, the ALJ asked the VE whether a hypothetical person who could perform light work with certain additional exertional and environmental restrictions and a "quiet" noise level intensity defined in the SCO could perform other work in the national or regional economy. R. 343. The VE was aware of the requirements of the DOT – actually citing to the DOT numbers for each position – when she responded to the ALJ's hypothetical. R. 343. The VE also testified that her testimony was consistent with the information contained in the DOT "except the pain, fatigue,

---

[7]"The DOT lists the maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00-4p (http://www.socialsecurity.gov/OP_Home/rulings/-di/02/SSR2000-04-di-02.html), 2000 WL 1898704.

concentration on task, headaches, those are not in the DOT. That – those are based on my vocational experience." R. 345. Plaintiff testified that she experienced pain in her right ear and sometimes should could hardly hear through it. R. 331. The VE heard Plaintiff's testimony and made allowances for Plaintiff's pain symptoms as part of her responses based "on her vocational experience." R. 345. The ALJ was entitled to rely on the VE's testimony and her experience in responding to the hypothetical, thus, the ALJ's decision was based on substantial evidence.

## IV.  CONCLUSION

The record in this case shows that Plaintiff has lived with scoliosis for many years and that her lifestyle and activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 21, 2016.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record